```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE

GERALD LEVINE, individually and      :
on behalf of all others similarly    :
situated,                            :
                                     :
          Plaintiff,                 :
                                     :
vs.                                  :   CIVIL ACTION
                                     :   NO. 95-690 JJF
METAL RECOVERY TECHNOLOGIES, INC.,   :
formerly known as                    :
MALVY TECHNOLOGY, INC.,              :
J. STEPHEN SMITH, ROY PEARCE,        :
WILLIAM M. GREENWOOD, and            :
MICHAEL LUCAS,                       :
                                     :
          Defendants.                :
                                     :
_____X

          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE

GERALD LEVINE, individually and      :
on behalf of all others similarly    :
situated,                            :
                                     :
          Plaintiff,                 :
                                     :
vs.                                  :   CIVIL ACTION
                                     :   NO. 96-525 JJF
METAL RECOVERY TECHNOLOGIES, INC.,   :
et al.                               :
                                     :
          Defendants.                :
                                     :
_____X
```

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, DISMISSAL OF
CERTAIN CLAIMS, APPROVAL OF CLASS NOTICE,
<u>AND SCHEDULING OF FINAL HEARING</u>

1

**INTRODUCTION**

Plaintiff moves the Court to preliminarily approve an additional settlement and the proposed dismissal of the remaining claims in this action, and to schedule the sending of Notice to the Class and a hearing on the final approval of the settlement and the dismissals, as well as upon counsel's application for an award of fees and expenses, and to hear counsel's plans regarding the distribution of the proceeds of this litigation.

**HISTORY OF THE LITIGATION**

As the Court is well aware, the first of these actions was filed a decade ago, in 1995. At the time the action commenced, the corporate defendant, known as Malvy Technology, Inc., was an apparently viable business in the automobile lock business, and was headed by Michael Lucas, a citizen of the United Kingdom. The case arose from a series of fraudulent or misleading press releases and other shareholder communications issued between October 7, 1993 and May 24, 1995 with respect to the prospects of Malvy's business. Subsequently, the corporate defendant was renamed Metal Recovery Technologies Inc. ("MRTI"), and entered the business of metal recovery, seeking to recover valuable zinc from scrap metal. A second action was later filed in this court to include claims alleging the wrongful promotion and distribution of Malvy stock by Barron Chase Securities and certain investment advisors.

Following protracted settlement discussions, complicated by the absence of any D & O insurance and the increasingly weak financial position of the corporate defendant as well as the sudden death of defendant Lucas, the parties negotiated and presented to the Court in

May 2000 the Second Amended Stipulation of Settlement ("Settlement Stipulation"), which in general provided for the payment for the benefit of the Class of the cash sum of $200,000, plus stock sufficient to generate sales proceeds of $3,050,000, as well as certain warrants to purchase 30 million shares of Malvy stock at a 25% discount from market. The Settlement Stipulation provided that in the event the contemplated stock sales did not generate the required funds, the Class would obtain a judgment against MRTI to the extent of the deficiency. The Settlement did not dispose of the Class' claims against defendants Barron Chase Securities, Inc., Gary Salter and Lawrence Turel, all of which were involved in questionable trading activities in Malvy stock. At the time of the settlement hearing in 2000, plaintiff's counsel advised the Court that a settlement in principle had been reached with Barron Chase for the sum of $300,000.

The Court approved the original settlement on May 25, 2000. From the cash settlement fund, the Court awarded a $7,500.00 payment to the named plaintiff, the reimbursement of expenses in the amount of $99,234.38, and attorneys' fees in the amount of 33-1/3% of the net settlement fund (including the net proceeds of future stock sales).

In connection with the Settlement, Notice was sent to the Class through the Court-approved mechanism of direct notice to shareholders on the Company's stock transfer records, nominee notice through street name holders and a summary Notice published in the Wall Street Journal. As a result of this process, approximately 500 claims were filed, in the total amount of slightly over $5 million of claimed losses.

Following the approval of the Settlement, plaintiff's counsel began the liquidation of shares of MRTI stock issued in the settlement, subject to volume limits agreed upon in connection with the Settlement. These sales, net of deductions for Court-approved attorney's fees and costs, generated approximately $125,000.

Not long after the Settlement, Plaintiff's counsel learned that MRTI had filed for protection in the United States Bankruptcy Court for the Northern District of Indiana. This filing frustrated the contemplated consummation of the Settlement, for it dramatically reduced the value of Malvy's stock, bringing it down to pennies per share, and at the same time precluded MRTI from issuing the additional shares necessary to satisfy the approximate $3 million settlement obligation.

Plaintiff's counsel have worked to protect the interests of the Class in the bankruptcy. In December 2000, counsel successfully petitioned this Court to withdraw $25,000 from the settlement fund to pay the charges of bankruptcy counsel to protect and further the interest of the Class in MRTI's bankruptcy. Since that time, Plaintiff's counsel have remained involved in the bankruptcy proceedings.

The bankruptcy proceeding has been complicated and extremely protracted, largely because the sole potentially valuable assets of MRTI were transferred to a foreign entity known as Metal Investment Trust Ltd. (a UK corporation), a holding company which owns Meretec Co., a business through which it has been claimed that the dezincing technology will be commercially exploited. Throughout, Plaintiff's counsel have worked to protect the value of the Class' judgment in the

4

bankruptcy proceedings. As a result, _if_ the Meretec venture is successful, the class should obtain some further, as yet undetermined, consideration.

Whether the base metal of MRTI shares can be transmuted to gold (or even zinc) for the benefit of Class members remains uncertain; if the commercialization of the dezincing technology does not proceed, or if there are adverse developments in the bankruptcy, it is possible that the Class judgment will prove worthless. At the present moment, it is unclear when this situation will be resolved. And, over the past five years the bankruptcy proceedings, which are beyond any control by class counsel, have simply dragged on, and the projected end date has been repeatedly deferred.

In prior status reports to the Court, Plaintiff has advised the Court that, apart from the consummation of the MRTI bankruptcy, there are loose ends with respect to three defendants, Lawrence Turel, Gary Salter and Barron Chase Securities. After negotiation and investigation, Plaintiff has concluded that no good purpose would be served by further efforts directed to defendants Turel and Salter. As plaintiff previously advised the Court, Turel has supplied a confidential financial statement verifying that he is impecunious, and he appeared for deposition and denied knowing participation in any wrongdoing. Gary Salter, who was incarcerated for a number of years, has relocated in Canada, and has persistently dodged efforts to obtain his deposition, several times reneging upon offers to appear. Although the Court has recently entered an Order for his deposition, plaintiffs believe that because of Salter's location they might have to proceed through the Hague Convention to take his deposition lawfully, and,

after reasonable investigation, believe that Salter is likely judgment proof and that the further expenditure of time and money towards obtaining a judgment against him would be counterproductive and only delay the closure of this case to no good purpose.

Barron Chase also presents issues of collectibility. As plaintiff has advised the Court, after agreeing to a $300,000 settlement in 2000, Barron Chase made the first $100,000 installment payment, then defaulted on the balance. It then ceased operations.[1] Defendant, Barron Chase, though a corporation, is not represented by counsel, its counsel having sought and obtained permission to withdraw. Plaintiff therefore urges the Court to approve the Settlement he reached with Barron Chase, notwithstanding the likelihood that no further payments will be made.

In light of the very modest funds presently on deposit (slightly over $103,000 in the Barron Chase fund and slightly over $165,000 remaining from the original settlement deposit and the liquidation of MRTI stock), the possibility that after further delays in the bankruptcy there may be a further recovery for the class, and the desirability of providing notice and completing claims processing without further delay, and on the most cost-effective basis, plaintiff proposes to proceed as follows:

(1) In view of the full notice program previously conducted, Notice of the proposed Barron Chase settlement, the dismissals, and

---

[1] As noted, although Barron Chase was a defendant in this action, it was originally contemplated by plaintiff's counsel that the settlement would be presented in a related Texas class action. Because that action was eventually dismissed, plaintiff's counsel believe that the settlement is appropriately presented here. Barron Chase through the settlement, wherever presented, obtains the same full release from liability that would have been obtained wherever the settlement was presented.

distribution procedures should be provided in the form attached as Exhibit A as follows: (a) by individual mailings to those class members who previously submitted approved claims; and (b) to persons whose names appear on a list provided by Barron Chase of its customers during the relevant period (which Barron Chase did not furnish, as it should have, when initial notice was sent to the class).

(2) A hearing should be held in or about early December 2005 to consider any objections to the Barron Chase settlement and the proposed dismissals of Salter and Turel, to approve the settlement, to consider the award of fees and costs out of the Barron Chase settlement, and for counsel to report to the Court on the status of the MRTI bankruptcy and their views on whether and when developments in the MRTI bankruptcy may make additional funds available for distribution to the Class;

(3) If the settlement is approved at the above hearing, there shall follow a period of processing any new claims of Barron Chase customers;

(4) Following claims processing, Class counsel presently plan to distribute to the class, subject to court approval, the available funds to which each claimant is entitled.

**ARGUMENT**

This Court is well aware of the standards governing preliminary approval of a proposed Class settlement. This case handily satisfies those standards.

The proposed settlement is now before the Court merely for the purposes of preliminary approval and the approval of notice to the Settlement Class, after which the Court will conduct a

final hearing on whether the Settlement should be approved. By its nature, preliminary approval should be readily granted and requires a showing simply that the settlement is *possibly* fair, reasonable and adequate. The court's function at this point is merely "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (citation omitted). As the *Manual for Complex Litigation* directs:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the Settlement.

*Manual for Complex Litigation, Third*, § 30.41 at p. 237 (1995); *Armstrong, supra*, 616 F.2d at 314 (The purpose of the pre-notification hearing is "to determine whether the proposed settlement is 'within the range of possible approval'").

At the final Settlement Hearing, the Court's primary concern will be whether the settlement, taken as a whole, is fundamentally fair, adequate and reasonable to the Class. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1992); *Class Plaintiffs, supra*, 955 F.2d at 1276; *Officers for Justice v. Civil Service*

8

*Commission*, 688 F. 2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983); and *In re Wash. Public Power Supply Sys. Sec. Lit. ("WPPSS")*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989). At this time, however, the Court need merely conclude that the Settlement could possibly meet that standard. In other words, it is only at the time of the Final Settlement Hearing, following notice to the Class, that the Court must exercise its discretion whether to approve the settlement as fair, reasonable, and adequate; for purposes of preliminary approval, it is sufficient that the proposal be adequate to justify serious and full consideration following notice to the Class.

Here, the proposed Settlement handily meets the standards for preliminary approval by virtue of the fact that Barron Chase is out of business and has no known assets. It cannot be seriously controverted that full consideration of this Settlement following Notice to the Class is appropriate. In the circumstances of a case such as this, it certainly seems preferable "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974). In short, the Court should find that the proposed settlement fits "within the range of possible approval," *Armstrong*, 616 F.2d at 314, a test that the settlement here easily satisfies.

## CONCLUSION

This litigation has been long pending and its results have not been pleasing to anyone, least of all Class Counsel.

Plaintiff's counsel respectfully submits that the plan described above is one that will be in the best interests of the Class, and respectfully requests the Court to enter an Order that will enable counsel to pursue it.

Dated: July 28, 2005                Respectfully submitted,

                                            ROSENTHAL, MONHAIT, GROSS &
                                              GODDESS, P.A.

*/s/ Norman M. Monhait*

Norman M. Monhait (DSBA No. 1040)
Citizens Bank Center, Suite 1401
Wilmington, Delaware 19801
(302) 656-4433

Attorneys for Plaintiff Gerald Levine and the Class

Of Counsel:

LAW OFFICES OF DAVID B. ZLOTNICK
1010 Second Avenue, Suite 1750
San Diego, California 92131
(619) 232-0331

LAW OFFICES OF DONALD B. LEWIS
Donald B. Lewis
5 Cynwyd Road
Bala Cynwyd, Pennsylvania 19004
(610) 668-0331

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of July, 2005, two copies of MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, DISMISSAL OF CERTAIN CLAIMS, APPROVAL OF CLASS NOTICE, AND SCHEDULING OF FINAL HEARING were served electronically upon the following:

>Joanne P. Pinckney, Esquire
>Bouchard Margules & Friedlander, P.A.
>222 Delaware Avenue, Suite 1400
>Wilmington, Delaware 19899

**and** a copy was served by first class mail, postage prepaid, upon the following:

>Barron Chase Securities
>7700 West Camino Real
>Suite 200
>Boca Raton, Florida 33433

Raymond L. Robin, Esquire
Olle Macaulay & Zorrilla, P.A.
Suite 2200
One S.E. Third Avenue
Miami, Florida 33131-1716

Mr. William M. Greenwood
*Pro Se*
10620 Bethany Drive
Aurora, Colorado 80014

Mr. Gary Salter
c/o Sheldon Skryzlo, Esquire
210 Dundas Street West
Toronto, ON M5G 2E8
Canada

Mr. Jack Alexander
Hog Town Road
Mulberry, AZ 72947

Brian D. Graifman, Esquire
Gusrae Kaplan & Bruno
120 Wall Street
New York, New York 10005

David B. Simpson, Esquire
Stein Simpson & Rosen, P.A.
Suite 109, Two University Plaza
Hackensack, NJ 07601-6202

David S. Mandel, Esquire
Mandel & McAliley
1200 Alfred I. DuPont Building
169 East Flagler Street
Miami, FL 33131

/s/ Norman M. Monhait
Norman M. Monhait (DSBA No. 1040)