## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GERALD LEVINE, individually and       :
on behalf of all others similarly situated,    :
                           :
            Plaintiff,            :
                           :
vs.                            :       CIVIL ACTION
                           :       NO. 95-690 JJF
METAL RECOVERY TECHNOLOGIES, INC.,   :
formerly known as                    :
MALVY TECHNOLOGY, INC.,            :
J. STEPHEN SMITH, ROY PEARCE,       :
WILLIAM M. GREENWOOD, and        :
MICHAEL LUCAS,                   :
                           :
           Defendants.        :

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GERALD LEVINE, individually and       :
on behalf of all others similarly         :
situated,                           :
           Plaintiff,            :
                           :
vs.                            :       CIVIL ACTION
                           :       NO. 96-525 JJF
METAL RECOVERY TECHNOLOGIES, INC.,   :
et al.                              :
           Defendants.        :

---

### PLAINTIFF'S BRIEF IN SUPPORT OF
### MOTION FOR FINAL APPROVAL OF SETTLEMENT, DISMISSAL
### OF CLAIMS AND AWARD OF ATTORNEYS' FEES AND EXPENSES

OF COUNSEL:

LAW OFFICES OF DAVID B. ZLOTNICK
1010 Second Avenue, Suite 1750
San Diego, CA 92101
(619) 232-0331

LAW OFFICES OF DONALD B. LEWIS
5 Cynwyd Road
Bala Cynwyd, Pennsylvania 19004
(610) 668-0331

November 11, 2005

ROSENTHAL, MONHAIT, GROSS
    & GODDESS, P.A.
Norman M. Monhait (DSBA No. 1040)
919 Market Street, Suite 1401
Citizens Bank Center
Wilmington, Delaware 19899-1070
(302) 656-4433
Attorneys for Plaintiff

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES                                                                    ii

I.     INTRODUCTION                                                                      1

II.    THE COURT SHOULD APPROVE THE DISMISSAL OF CLAIMS AND THE
       BARRON CHASE SETTLEMENT                                                          5

       A.    The Dismissals Are Appropriate And Non-Prejudicial                         5

       B.    The Barron Chase Settlement Is Fair And Reasonable                         5

             1.    The Complexity Of The Litigation And Risks With
                   Respect To Liability And Damages                                     6

             2.    The Parties Engaged In Extensive Pretrial
                   Proceedings And Discovery                                            9

             3.    The Reaction Of the Class Supports The Settlement                    9

III.   PLAINTIFF'S COUNSEL SHOULD BE AWARDED REASONABLE
       ATTORNEYS' FEES AND EXPENSES                                                    10

       A.    The Governing Standards Support Plaintiff's Request For The
             Award Of Attorneys' Fees                                                  10

       B.    Plaintiff's Request For Reimbursement Of Expenses Should Be
             Granted                                                                   13

IV.    CONCLUSION                                                                      14

i

## TABLE OF AUTHORITIES

<u>Case</u>                                                                                        <u>Page(s)</u>

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*,
        480 F. Supp. 1195 (S.D.N.Y. 1979)                                          11, 12

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
        603 F.2d 263 (2d Cir. 1979),
        *cert. denied*, 444 U.S. 1093 (1980)                                          8

*Blum v. Stenson*,
        465 U.S. 886 (1984)                                                          11

*Boeing Co. v. Van Gemert*,
        444 U.S. 472 (1980)                                                          10

*Boeing Co. v. Van Gemert*,
        516 F. Supp. 412 (S.D.N.Y. 1981)                                            12

*Fisher Bros. v. Cambridge-Lee Industries, Inc.*,
        630 F. Supp. 482 (E.D. Pa. 1985)                                             9

*General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.*,
        55 F.3d 768 (3d Cir. 1995)                                                   11

*GFL Advantage Fund v. Colkitt*,
        272 F.3d 189 (3d Cir. 2001),
        *cert. denied*, 536 U.S. 923 (2002)                                          8

*Girsch v. Jepson*,
        521 F.2d 153 (3d Cir. 1975)                                                6, 9

*In re Ampicillin Antitrust Litigation*,
        526 F. Supp. 494 (D.D.C. 1981)                                               11

*In re Fine Paper Antitrust Litig.*,
        751 F.2d 562 3d Cir. 1984)                                                   11

*In re Numerex Corporation Securities Litigation*,
        913 F. Supp. 391 (E.D. Pa. 1997)                                             12

*In re Prudential Insurance Company of America Sales Practices Litigation*,
        962 F. Supp. 572 (D.N.J. 1997),
        *aff'd*, 148 F.3d 283 (3d Cir. 1998)                                         11

*In re SmithKline Beckman Corp. Securities Litigation*,
        751 F. Supp. 525 (E.D.Pa. 1990)                                            12, 13

*In re Valuevision International Inc. Securities Litigation*,
        957 F. Supp. 699 (E.D. Pa. 1997)                                             12

*In re Warner Communications Securities Litigation*,
    618 F. Supp. 735 (S.D.N.Y. 1985),
    *aff'd*, 798 F.2d 35 (2d Cir. 1986)             10, 11

*Lake v. First Nationwide Bank*,
    900 F. Supp. 726 (E.D. Pa. 1995)             7, 9

*Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*,
    487 F.2d 161 (3d Cir. 1973),
    *appeal following remand*, 540 F.2d 102 (3d Cir. 1976)             10, 11

*Matis v. Siess, et al.*,
    467 F. Supp. 217 (S.D.N.Y. 1979)             12

*Milstein v. Hock*,
    600 F. Supp. 254 (E.D.N.Y. 1984)             8

*Shelton v. Pargo, Inc.*,
    582 F.2d 1298 (4th Cir. 1978)             5

*Sprague v. Ticonic National Bank*,
    307 U.S. 161(1939)             10

*Trans World Airlines Inc. v. Hughes*,
    312 F. Supp. 478 (S.D.N.Y. 1970),
    *modified*, 449 F.2d 51 (2d Cir. 1971),
    *rev'd*, 409 U.S. 363 (1973)             8

*Trustees v. Greenough*,
    105 U.S. 527 (1882)             10

*Young v. Katz*,
    447 F. 2d 431 (5th Cir. 1971)             8

**Other Statutes**

Federal Rules of Civil Procedure 23(e)             3, 5

Securities Exchange Act of 1934             7

Court Awarded Attorneys' Fees, Report of the Third Circuit
    Task Force, 108 F.R.D. 237 (1986)             10

## I. **INTRODUCTION**

This Court has considerable familiarity with this action in light of its involvement in the previous Settlement approved on May 25, 2000, and through subsequent supervision of the litigation. Plaintiff therefore will not burden the Court with a detailed recitation of the background of this motion, but incorporates by reference his July 28, 2005 status report and the detailed recitation of facts in plaintiff's July 28, 2005 motion for preliminary approval of the matters now before the Court.

These cases have has remained in this Court for over a decade for reasons which have arisen outside the four corners of the litigation. When the first of these actions was filed a decade ago, the corporate defendant, then Malvy Technology, Inc., was an apparently viable business in the automobile lock business. By May 25, 2000, when this Court approved a settlement of certain claims against the corporate defendant and certain of its officers ("the First Settlement"), the defendant had been renamed Metal Recovery Technologies Inc. ("RTI"), and was in the business of metal recovery, seeking to recover valuable zinc from scrap metal. Today the entity is still in the midst of an extended bankruptcy proceeding filed in 2000.

The First Settlement had followed protracted settlement discussions, complicated by the absence of any D & O insurance and the weak financial position of the corporate defendant. That settlement, reflecting the Company's very weak financial condition, provided for the transfer for the benefit of the Class of the cash sum of just $200,000, plus securities sufficient to generate sales proceeds of $3,050,000, plus certain warrants to purchase shares of MRTI stock at a discount from market. The first Settlement Stipulation provided that if the stock sales did not satisfy the settlement amount, the Class could obtain a judgment against MRTI to the extent of the deficiency. The First Settlement did not dispose of claims of the Class against defendants Barron Chase Securities, Inc., Gary Salter and Lawrence Turel, all of whom were involved in alleged unlawful activities with respect to the distribution of and manipulation of Malvy stock. The Court approved the First Settlement on May 25, 2000, and awarded plaintiff's counsel their

1

litigation expenses in the amount of $99,234.38, fees in the amount of 33-1/3% of the net cash settlement fund, with interest (which in fact amounted to under $32,000), and fees in the amount of 33-1/3% of the net proceeds of future stock sales.

Notice of the First Settlement was directed to the Class through direct notification of shareholders on MRTI's stock transfer records, nominee notice through street name holders and *The Wall Street Journal* publication notice. Approximately 500 claims were filed, with a value of about $5 million. Following the First Settlement, plaintiff's counsel through an escrow agent began the liquidation of shares of MRTI stock issued in the Settlement, subject to volume limits agreed upon in an Escrow Agreement negotiated by the parties. These sales, net of the Court-approved attorneys' fee subtractions, generated just over $125,000, including interest.

However, not long after the Settlement, MRTI filed for bankruptcy. This frustrated consummation of the Settlement, for it brought MRTI's share price down to pennies per share, and precluded MRTI from issuing any additional shares that could be sold to satisfy the claims of the Class. Accordingly, plaintiff's counsel found it necessary to, and did, undertake to protect the interests of the Class in the bankruptcy, filed in the U.S. Bankruptcy Court for the Northern District of Indiana. In December 2000, plaintiff successfully petitioned this Court to withdraw $25,000 from the settlement fund to retain bankruptcy counsel. Class counsel have thereafter met with bankruptcy counsel and interested parties, filed a bankruptcy claim and otherwise sought to protect the interests of the Class.

MRTI's bankruptcy proceeding has been complicated and extremely protracted. This is largely because the principal asset of MRTI, potentially valuable rights in a novel de-zincing technology, have largely been transferred to a UK corporation known as Metal Investment Trust Ltd., a holding company which owns Meretec Co. -- a business through which it has been claimed that the dezincing technology will be commercially exploited. If the Meretec venture is successful, the Class should obtain some further, as yet undetermined, consideration for its approximately $3 million judgment. If the commercialization of the dezincing technology

2

does not proceed, or if there are adverse developments in the bankruptcy, it is possible that the judgment will prove worthless. The bankruptcy proceeding is beyond the control of plaintiff's counsel, and the end date of the bankruptcy has been repeatedly extended.

Because of the prolongation of the MRTI bankruptcy proceedings, no distribution to Class members has been possible. Indeed, it is still impossible to say whether the Class will receive a pittance (presently available cash sums as of late May included the residue of the cash originally deposited by defendants, or $41,384.67; $125,035.26 resulting from the liquidation of MRTI stock; and $103,570.58 from the settlement with defendant Barron Chase Securities, Inc. ("Barron Chase") described below), or a much more substantial return if the judgment proves valuable in the MRTI Bankruptcy. Plaintiff in the meantime has endeavored to pursue claims against three remaining defendants not encompassed in the First Settlement -- Lawrence Turel, Gary Salter and Barron Chase.

Plaintiff has after negotiation and investigation reached the conclusion that no productive purpose would be served by further efforts directed to defendants Turel and Salter, and that claims against them should be dismissed under Rule 23(e). In the judgment of plaintiff's counsel, dismissal of the claims will not prejudice but rather benefit the Class, because it appears that the claims are uncollectible and that their pursuit would only further delay distribution to the Class and deplete available settlement funds. Mr. Turel was a stock broker and market maker with Barron Chase. Plaintiff took his deposition testimony, at which he steadfastly denied any knowing involvement in any fraud. Equally significantly, he has submitted a financial statement showing minimal assets, and he has little current income. Mr. Salter was incarcerated for a number of year following a conviction for his involvement in the Malvy stock fraud and other frauds. He has relocated in Canada, and has dodged efforts to obtain his deposition, which would now have to take place under the Hague Convention. To the best of plaintiff's counsel's knowledge, Salter has no reachable assets following his conviction and incarceration. The expenses of conducting discovery in Canada would be unproductive if not counterproductive.

3

Plaintiff further requests the Court to approve a settlement with Barron Chase. That settlement also presents issues of uncollectibility. Barron Chase agreed in 2000 to a $300,000 settlement comprised of installment payments, which were to be made by Barron Chase, but also guaranteed by Robert Kirk, a principal owner of the firm. Barron Chase made only the first $100,000 payment, then defaulted on the balance. It thereafter ceased operations. Kirk has also defaulted on his guaranty obligations, and appears to be impecunious. Though a corporation, Barron Chase is not now even represented by counsel in this Court, its counsel having sought and obtained permission to withdraw. Plaintiff believes that the best interests of the Class will be served by approval of the original settlement, and entry of judgment against Barron Chase and Kirk in the amount of $300,000, less payments made, in full recognition that it is likely that no further payments will be received.[1]

Notwithstanding numerous obstacles, including serious collection problems, the lack of any available insurance, a corporate defendant (MRTI) that was in difficult financial straits and which would be unable to satisfy any substantial judgment, a broker defendant (Barron Chase) that had numerous legal and financial difficulties and ultimately ceased operating, and individual defendants who were largely foreign residents and claimed to have negligible assets, plaintiff and counsel pursued this matter for years, at the cost of substantial time and money. Based on those years of efforts, plaintiff and counsel have concluded that the only reasonable and practical alternative is the conclusion of this litigation.

Pursuant to an Order of this Court, copies of the Notice of Proposed Class Action Settlement, Settlement Hearing, and Right to Appear (the "Class Notice") were mailed to hundreds of persons who appears to be members of the Class. To date, not one objection to the

---

[1] Plaintiff originally intended to present the Barron Chase settlement for approval in a Texas state court action in which Barron Chase was also a defendant along with a number of other securities firms, but has presented the settlement to this court because the Texas action was eventually dismissed. Barron Chase, through approval of the settlement, will obtain the full release from liability that would have been obtained wherever the settlement was presented.

Settlement has been received from any Class Member.[2] Because the Settlement represents the best practical result for the Class, it should be approved.

## II.     THE COURT SHOULD APPROVE THE DISMISSAL OF CLAIMS AND THE BARRON CHASE SETTLEMENT

Plaintiff respectfully submits that the Court should approve the dismissal of the claims against Turel and Salter and the Barron Chase settlement.

### A.  The Dismissals Are Appropriate And Non-Prejudicial

The voluntary dismissal of claims in a class action proceeding is governed by Rule 23(e). Under that Rule, Court approval of dismissals may be granted where there are no private agreements between the Class representative and the dismissed parties, and where there is no prejudice to the Class. *See* Rule 23(e), Federal Rules of Civil Procedure; *cf. Shelton v. Pargo, Inc.*, 582 F.2d 1298 (4th Cir. 1978). Here the dismissals are non-collusive. They are not the subject of any private agreement, and the dismissals, which will protect the class from unproductive expenditures of funds, appear  in the best interests of the Class. Counsel respectfully submit that the Court should approve these dismissals.

### B.  The Barron Chase Settlement Is Fair And Reasonable

Plaintiff set forth the standards for approval of class action settlements in connection with the First Settlement, and will not burden the Court with a detailed recitation of authority at this time. Suffice it to say that the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be thereby conserved. The ultimate issue before the Court is whether the proposed settlement is fair and reasonable to the Class and the subject of arm's-length bargaining.

The principles governing class action settlements in this Circuit have for decades included consideration of the following factors: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings

---

2   The period for filing any such objections expires on November 21, 2005 .

5

and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all attendant risks of litigation. *Girsch v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). Approval of a proposed class action settlement is within the sound discretion of the Court. *Id.* at 156.

When the Barron Chase settlement was negotiated -- before Barron Chase ceased to be a viable corporation -- it was the considered judgment of experienced counsel for plaintiff that there were serious questions whether a more favorable economic result would be accomplished through further litigation. However, as events have unfolded it has become clear that the issues of collectibility are so great that enforcement of the settlement may well be the best result achievable. Plaintiff respectfully submits that even assuming *arguendo* that Barron Chase were viable and that a substantial judgment were collectible against it -- which plaintiff believes to be an assumption completely contrary to reality -- the settlement should be approved.

### 1. The Complexity Of The Litigation And Risks With Respect To Liability And Damages

The liability of Barron Chase in this litigation has been premised upon (1) alleged payment of bribes by defendant Salter to defendant Turel, then a Barron Chase broker, and to other Barron Chase brokers, to aggressively sell and manipulate the market for Malvy stock; (2) receipt and distribution of unregistered shares of Malvy stock from corporate insiders through accounts that Salter and a Salter company, Corporate Asset Management, maintained with Turel at Barron Chase.

Trial of the claims against Barron Chase would be extremely complex and quite lengthy, turning on issues of *respondeat superior* or control persons liability for representatives no longer employed by the firm. More than ten years after the operative events, proof of liability would be difficult to mount. All of the defendants charged with participation in

the illegality have denied knowingly participating in any wrongdoing, as did the now-deceased principal officer of Malvy, Michael Lucas.

Even assuming that it could be shown that Salter issued bribes to brokers, serious questions would remain as to whether given the nature of these activities, Barron Chase had corporate liability for the acts of its representatives under the doctrine of *respondeat superior*, and if not, whether it had sufficient knowledge of and participation in the actions as to subject it to controlling persons liability under the Securities Act of 1934. Barron Chase also raised a statute of limitations defense. While plaintiff successfully opposed a motion by Barron Chase to dismiss the action, a different legal standard would apply on a summary judgment motion and/or at trial, and a judgment favorable to the plaintiff would unquestionably be the potential subject of post-trial motions and appeals.

In assessing the fairness, reasonableness and adequacy of the settlement, the Court must balance against the risks of litigation the benefits afforded to Class Members and the certainty of a recovery. *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 733 (E.D. Pa. 1995). Although plaintiff believes that his claims are meritorious, establishing liability at trial was, by no means, a certainty, and would depend heavily on the testimony of adverse witnesses many years after the operative events and without documentary smoking guns. Expert testimony provided by each of the sides could be expected to differ profoundly, and the reaction of jurors to such testimony is inherently uncertain, leaving the outcome of this action in some doubt.

Plaintiff believes that he would be able to overcome these risks, but cannot ignore the potential of an unfavorable determination by the jury on liability. Plaintiff also recognizes he would also have been able to establish that the Class was injured and that the other Class members suffered substantial damages, and that a jury might be influenced by defendants' experts, who would predictably contend that any activities by Barron Chase had an insignificant or unprovable impact upon the price of Malvy stock during the relevant period.

7

Significant risks would remain in establishing both causation for and existence of damages against Barron Chase. For example, during the period during which Salter allegedly orchestrated the touting of Malvy stock price and the heavy buying of that stock, Malvy and its officers and directors were issuing statements that were alleged to have artificially inflated the price of the stock, and inflating the stock price by these statements. In addition, under the Third Circuit's decision in *GFL Advantage Fund v. Colkitt*, 272 F.3d 189, 205-06 (3d Cir. 2001), *cert. denied*, 536 U.S. 923 (2002), issues would remain as to whether sales of stock for which Barron Chase was responsible impacted the stock price at a time when that defendant caused misinformation to be injected into the market regarding the stock. A battle of experts on the financial consequences of defendant's conduct on this point would almost certainly ensue.

If a party could be assured that a better result could be obtained, he would seldom if ever agree to a settlement for any amount less than the full amount of projected damages. Such assurance can rarely be found, however, and certainly cannot be found in the particular circumstances of this complex securities action.

Further, the risks do not end at trial as many substantial judgments have been overturned in the past. *See Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979), *cert. denied*, 444 U.S. 1093 (1980) (reversing an $87 million dollar judgment after trial); *Trans World Airlines Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973) (overturning $145 million judgment after years of appeals).

In addition, litigation is extremely costly. The certainty of present Settlement must be balanced against the delays and expense of achieving a more favorable result at trial. *Young v. Katz*, 447 F. 2d 431 (5th Cir. 1971). Courts have consistently held that "(t)he expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of [s]ettlement." *Milstein v. Hock*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984) (citations omitted.) Here, the costs of proceeding to trial to establish the liability of a defunct

8

entity would almost certainly exhaust the residue of the existing Settlement Fund.

In any event, experienced counsel, operating at arm's length, have weighed these and all other enumerated factors and continue to endorse the approval of the Settlement. As courts have explained, the view of the attorneys actively conducting the litigation, while not conclusive, is "entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985).

### 2. The Parties Engaged In Extensive Pretrial Proceedings And Discovery

It should be noted that prior to entering into the Barron Chase settlement, plaintiff's counsel in the principal litigation conducted substantial factual investigation with respect to the factual basis for the claims. Plaintiff's extensive discovery efforts included the inspection of thousands of pages of documents from Malvy as well as numerous non-parties as well as depositions of Malvy's principals and outside counsel.

In judging the stage of the proceedings and the extent of discovery completed, *Girsh v. Jepson* teaches enough information should have been exchanged so that each side has been able to make an informed assessment of the strengths and weaknesses of its position and make a reasoned judgment on its settlement position. Here, plaintiff's counsel was able to obtain sufficient information to make a thorough appraisal of the adequacy of the Settlement.

### 3. The Reaction Of The Class Supports The Settlement

As confirmed by the Declaration of David B. Zlotnick previously filed with this Court, Notice of the Settlement has been individually mailed in accordance with the Amended Order of the Court issued on October 4, 2005. Indicative of the practicality and fairness of the Settlement, not one objection to the Settlement to date has been registered by any Class member. "[T]he low number of objections or requests for exclusion bolsters the contention that this is not an unreasonable settlement." *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995). This factor militates strongly in favor of a finding that the Settlement is fair, reasonable and adequate.

III.   **PLAINTIFF'S COUNSEL SHOULD BE AWARDED REASONABLE ATTORNEYS' FEES AND EXPENSES**

Counsel for plaintiff in the Court approved-notice to the Class advised the Class that they might seek one-third of the Barron Chase Fund (now just over $103,500), plus expenses incurred since the hearing on the First Settlement. To this date, no objection has been received to the request. Nonetheless, plaintiff's counsel have elected under the circumstances of this case to seek only $25,000 in fees -- less than 25% of the Barron Chase Fund -- plus their aggregate expenses of $37,365.77. (These expenses include an total of $10,132.60 in continued litigation and bankruptcy-related expenses, plus the sum of $27,233.17 for all claims processing to date.)

A.   **The Governing Standards Support Plaintiff's Request ForThe Award Of Attorneys' Fees**

As this Court is aware from the detailed presentation of legal authorities submitted by plaintiff in connection with the First Settlement, attorneys whose efforts create a fund from which others benefit are entitled to recover fees from the fund. This "common fund doctrine" has long been recognized by the U.S. Supreme Court. *See Trustees v. Greenough*, 105 U.S. 527 (1882); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

The federal courts have been guided by a general standard of reasonableness in awarding attorneys' fees arising from the creation of a common fund. Until the early 1970s, most courts calculated fee awards based on a "reasonable percentage" of the amount recovered. *See* Court Awarded Attorneys' Fees, Report of the Third Circuit Task Force ("Task Force Report"), 108 F.R.D. 237, 242 (1986); *In re Warner Communications Securities Litigation*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). In 1973, the Court of Appeals for the Third Circuit established the alternative "lodestar" approach. *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) ("*Lindy I*"), *appeal following remand*, 540 F.2d 102 (3d Cir. 1976) ("*Lindy II*").[3]

---

[3] Under the "lodestar" approach, the court first calculated the "lodestar" – the number of hours reasonably expended multiplied by a reasonable hourly market rate. *Lindy I*, 487 F.2d at 167. The court could then adjust the lodestar, by means of a "multiplier" or

10

After growing criticism of the lodestar approach and serious practical problems in its application, the 1980s and 1990s saw a move away from the use of the *Lindy* analysis in this and other circuits. In 1984, the U.S. Supreme Court reiterated that attorneys' fees in common fund cases are "based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 901 n.16 (1984). In 1986, the Third Circuit Task Force recommended a return to the percentage method in common fund cases.

In *General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 821 (3d Cir. 1995), the Third Circuit Court of Appeals held that the most appropriate method for calculating attorneys' fees in a common fund case is the percentage of recovery method.[4]

There is no general rule determining what precise percentage of a common fund should be awarded as a fee. Although the amount of the fee must be determined by the facts of each case, *In re Prudential Insurance Company of America Sales Practices Litigation*, 962 F. Supp. 572, 578 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998), courts consistently have noted that the percentage of the common fund recovery assessed as attorneys' fees tends to fall within a general range of reasonableness. In *In re Warner Communications Securities Litigation*, 618 F.Supp., *supra*, Judge Keenan stated that "[t]raditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions."

Many courts have, where appropriate, approved and awarded fees of 35% or greater of a settlement fund. *See, e.g., In re Ampicillin Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1981) ($3,300,000 in fees awarded representing 45% of settlement fund); *Beech*

---

"enhancement", to reflect the contingent nature of the litigation and quality of services, including the recovery obtained, rendered by counsel. *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 583-84 (3d Cir. 1984).

[4] In addition, as suggested by *General Motors*, the fee requested may be cross-checked for reasonableness through consideration of the *Lindy* lodestar factors. *Id.*

*Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195 (S.D.N.Y. 1979) (53.2%

of the settlement fund); *Boeing Co. v. Van Gemert*, 516 F. Supp. 412 (S.D.N.Y. 1981) (36.2% of

the settlement fund); *Matis v. Siess, et al.*, 467 F. Supp. 217 (S.D.N.Y. 1979) (37% of the

settlement fund). This Court on May 25, 2000 granted plaintiff's counsel 33-1/3% of the net

value of the Settlement Fund.

        Fee awards in the amount of 30% or more of the total recovery have become

common in securities class actions, often in cases where an award of such percentage results in a

substantial multiplier to counsel's lodestar. *See, e.g., In re SmithKline Beckman Corp. Securities

Litigation*, 751 F. Supp. 525, 533 (E.D.Pa. 1990); *In re Valuevision International Inc. Securities

Litigation*, 957 F. Supp. 699 (E.D. Pa. 1997) (Pollak, J.)(awarded fees at an "effective rate" of

30% of the gross settlement fund of $1,057,905.40, with reimbursement of $131,768.41 in

expenses); *In re Numerex Corporation Securities Litigation*, 913 F. Supp. 391 (E.D. Pa. 1997)

(Dalzell, J.)(fees of 30%).

        Here, plaintiff's counsel here request as fees under 25% of the Settlement Fund

resulting from their efforts in this case. Despite the lack of objection to a higher award, plaintiff's

counsel have chosen to seek a smaller award in light of the unfortunate history of the litigation

and their desire to extend every possible benefit to the Class. Counsel respectfully submit that the

modest percentage for which they seek recompense falls squarely within the percentages awarded

in common fund cases by district judges in this Circuit.

        The same factors supporting higher percentage awards and much larger fees in

the preceding precedents are present here. Counsel are highly experienced and accomplished in

class action litigation, particularly securities actions. Details of their experience have been

previously presented to the Court the accompanying affidavits. Counsel have devoted literally

thousands of hours to the diligent prosecution of this litigation, including hundreds since the First

Settlement was approved, and respectfully submit that the unhappily small settlement funds

amassed in the case are not the result of poor lawyering or a lack of effort, but the nature and

12

financial instability of the defendants involved. The requested fee of $25,000 is a small fraction of counsel's lodestar. Moreover, the three firms representing plaintiff worked together in the prosecution of this litigation and attempted at all times to minimize unnecessary duplication of work.

   In substantiation of their request, the firms representing plaintiff in these actions have each attached declarations regarding their time and expenses since June 2000, excluding substantial time related to the MRTI Bankruptcy. Plaintiff's counsel's declarations were compiled from contemporaneous time records maintained by each of the firms which participated in this case. Petitioners have used their current, rather than historic, billing rates. Use of current rates to calculate the lodestar figure has been endorsed by courts as a means of accounting for inflation, a factor which diminishes the value of fee awards made after services have been rendered. Here, petitioners were not compensated for the efforts in this litigation for over five years.

   **B. Plaintiff's Request For Reimbursement**
    **Of Expenses Should Be Granted**

   Reimbursement of expenses to counsel who create a common fund is appropriate. *See In re SmithKline*, 751 F. Supp. at 534. Petitioners in this litigation have since June 1, 2000 incurred and/or paid reasonable and necessary litigation and bankruptcy-related expenses of $10,132.60, plus expenses of $27,233.17 for claims administration to date. A breakdown of the aggregate expenses by category is contained in the respective affidavits of plaintiff's counsel submitted herewith. In light of the nature of this litigation, the unreimbursed expenses incurred to date by petitioners were reasonable and proper and should be reimbursed.

13

## IV.    **CONCLUSION**

For all the foregoing reasons, plaintiff respectfully requests the Court to enter an

order in the form annexed hereto approving the dismissal of claims against defendants Salter and

Turel; approving the settlement with Barron Chase; and awarding plaintiff's counsel's attorneys'

fees in the amount of $25,000 plus reimbursement of expenses in the amount of $37,365.77.


Dated: November 11, 2005                                     ROSENTHAL, MONHAIT, GROSS
                                                            & GODDESS, P.A.


                                                            _____
                                                            Norman M. Monhait (DSBA No. 1040)
                                                            919 Market Street, Suite 1401
                                                            Citizens Bank Center
                                                            P.O. Box 1070
                                                            Wilmington, Delaware 19899-1070
                                                            (302) 656-4433
                                                            Attorneys for Plaintiff

OF COUNSEL:

LAW OFFICES OF DAVID B. ZLOTNICK
1010 Second Avenue, Suite 1750
San Diego, California 92101
(619) 232-0331

LAW OFFICES OF DONALD B. LEWIS
5 Cynwyd Road
Bala Cynwyd, Pennsylvania 19004
(610) 668-0331


14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of November, 2005, a copy of **Plaintiff's Brief In Support Of Motion For Final Approval Of Settlement, Dismissal Of Claims And Award Of Attorneys' Fees And Expenses** was served electronically upon:

> Joanne P. Pinckney, Esquire
> Bouchard Margules & Friedlander, P.A.
> 222 Delaware Avenue, Suite 1400
> Wilmington, Delaware 19899

**and** a copy was served by first class mail, postage prepaid, upon the following:

> Barron Chase Securities
> 7700 West Camino Real
> Suite 200
> Boca Raton, Florida 33433

Raymond L. Robin, Esquire
Olle Macaulay & Zorrilla, P.A.
Suite 2200
One S.E. Third Avenue
Miami, Florida 33131-1716

Mr. William M. Greenwood
*Pro Se*
10620 Bethany Drive
Aurora, Colorado 80014

Mr. Gary Salter
c/o Sheldon Skryzlo, Esquire
210 Dundas Street West
Toronto, ON M5G 2E8
Canada

Mr. Jack Alexander
Hog Town Road
Mulberry, AZ 72947

Brian D. Graifman, Esquire
Gusrae Kaplan & Bruno
120 Wall Street
New York, New York 10005

David B. Simpson, Esquire
Stein Simpson & Rosen, P.A.
Suite 109, Two University Plaza
Hackensack, NJ 07601-6202

David S. Mandel, Esquire
Mandel & McAliley
1200 Alfred I. DuPont Building
169 East Flagler Street
Miami, FL 33131

Norman M. Monhait (# 1040)
ROSENTHAL MONHAIT GROSS
 & GODDESS, P.A.
919 Market Street, Suite 1401
Citizens Bank center
P.O. Box 1070
Wilmington, Delaware 19899
(302) 656-4433
Email: nmonhait@rmgglaw.com